**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

RAUL RODRIGUEZ,

        Plaintiff,

    v.                                          Civ. No. 22-32 KK/JMR

KAISER-FRANCIS OIL COMPANY and
FLOW TESTING, INC.,

        Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

Before the Court are:  (1) Defendants' Motion for Judgment on the Pleadings or, in the Alternative, Default Judgment (Doc. 195), filed January 4, 2024; and, (2) Plaintiff's Motion for Judgment on the Pleadings or, in the Alternative, Motion for Summary Judgment on Defendants' Counterclaims (Doc. 230), filed February 28, 2024. Having considered the parties' submissions, the record, and the relevant law, the Court FINDS that Defendants' Motion is not well-taken and should be DENIED, and that Plaintiff's Motion is well-taken in part and should be GRANTED IN PART and DENIED IN PART. Additionally, the Court is inclined to grant summary judgment in Plaintiff's favor on one counterclaim not disposed of by this Order on grounds Plaintiff did not raise in his Motion; however, the Court will first permit both sides to submit supplemental briefing on this issue.

## I.  BACKGROUND

On February 22, 2021, Plaintiff Raul Rodriguez was injured when he fell while trying to open a ball valve on a skid-mounted manifold at an oilwell.[1] (Doc. 1 at 2; Doc. 142 at 2.) Plaintiff

---

[1] The International Association of Drilling Contractors ("IADC") defines a "ball valve" as "[a] valve that employs a rotating ball to open or close the flow passage." https://iadclexicon.org/ball-valve/ (last accessed Sept. 7, 2024). The IADC defines a "manifold" as, among other things, "[a] system of pipe and valves that serves to convert separate

filed a complaint on January 14, 2022, asserting that his injuries resulted from the negligence of Defendant Flow Testing, Inc. ("Flow Testing"), which allegedly built and maintained the manifold, and Defendant Kaiser-Francis Oil Company ("Kaiser-Francis"), which allegedly owned and operated the well where the incident occurred. (Doc. 1; Doc. 23 at 3.)

On December 1, 2022, Defendants filed indemnification and contribution counterclaims against Plaintiff. (*See* Docs. 64, 65.) In these counterclaims, Defendants alleged the following. On February 22, 2021, Kaiser-Francis owned and operated the well and wellhead at issue. (Doc. 64 at ¶ 8; Doc. 65 at ¶ 8.) Kaiser-Francis had an agreement with Flow Testing, whereby Flow Testing would provide "labor, machinery, equipment and transportation" for the well site. (Doc. 64 at ¶ 9; Doc. 65 at ¶ 9.) Separately, Flow Testing had an agreement with Atlantic Energy Partners LLC ("AEP"), under which AEP would furnish personnel for oil drilling operations at Kaiser-Francis wells. (Doc. 64 at ¶ 11; Doc. 65 at ¶ 11.) AEP, in turn, contracted with independent contractors to operate Flow Testing's equipment at the well site. (Doc. 64 at ¶ 12; Doc. 65 at ¶ 12.) Plaintiff signed an Independent Contractor Agreement ("ICA") with AEP to work at the site. (Doc. 64 at ¶¶ 13-14; Doc. 65 at ¶¶ 13-14.) Plaintiff fell and injured himself because of his own use of improper equipment and improper positioning while operating the ball valve in question. (Doc. 64 at ¶ 28; Doc. 65 at ¶ 28.)

In their counterclaims, Defendants incorporated excerpts from what they claim to be the ICA between Plaintiff and AEP. (Doc. 64 at ¶ 13; Doc. 65 at ¶ 13; Docs. 64-1, 65-1.) These excerpts consist of three non-sequential pages of what is labeled as an eleven-page document.

---

flows into one flow, to divide one flow into separate parts, or to reroute a flow to any one of several possible destinations." https://iadclexicon.org/manifold/ (last accessed Sept. 7, 2024). The IADC defines a "skidding system" as "[e]quipment … used for horizontal movement of" drilling equipment including manifolds. https://iadclexicon.org/skidding-system/ (last accessed Sept. 7, 2024).

(Docs. 64-1, 65-1.) Included in the excerpts are sections identifying Plaintiff as the "Contractor" described in the agreement and Plaintiff's signature on a signature page. (Doc. 64-1 at 1-3; Doc. 65-1 at 1-3.) Another excerpt includes an indemnification clause stating that the Contractor

> shall release AEP from any liability for, and shall protect, defend, indemnify, save and hold harmless AEP from and against all claims, demands, and causes of action of every kind and character for personal injury, illness, death, property damage (whether real or personal, owned or leased) and loss arising from or resulting from the performance of this agreement, without limits and irrespective of whether such claims, demands and causes of action are contributed to or caused by the sole, joint, comparative, concurrent, active or passive negligence of AEP.

(Doc. 64-1 at 2; Doc. 65-1 at 2.) The indemnification clause further states that the Contractor's "indemnity … shall be effective to the maximum extent permitted under applicable law[.]" (Doc. 64-1 at 2; Doc. 65-1 at 2.)

In their original counterclaims, Defendants asserted that they are intended third-party beneficiaries of the excerpted indemnification clause in the ICA, and that Plaintiff is therefore contractually required to indemnify them for his negligence. (Doc. 64 at ¶¶ 30-36; Doc. 65 at ¶¶ 30-36.) Defendants further asserted that they are entitled to traditional or proportional indemnification as well as contribution from Plaintiff. (Doc. 64 at ¶¶ 37-47; Doc. 65 at ¶¶ 37-47.)

On December 21, 2022, Plaintiff filed answers to Defendants' counterclaims, in which he admitted to the basic circumstances surrounding the incident, including that Kaiser-Francis owned and operated the well site where the accident occurred, and that Flow Testing provided equipment and services including the skid-mounted manifold involved in the incident. (Doc. 68 at ¶¶ 8-10; Doc. 69 at ¶¶ 8-10.) He also admitted that (1) AEP hired him to work at the well site pursuant to an independent contractor agreement, (2) the excerpts incorporated into the counterclaims

"appear[] to be four pages[2] of an eleven-page document," (3) "the first page of the document includes the title 'Independent Contractor Agreement,'" and (4) his "signature is on page 3 of the attached document." (Doc. 68 at ¶¶ 13-15; Doc. 69 at ¶¶ 13-15.) However, he nevertheless denied that this document "constitutes an agreement" or that Defendants are intended third-party beneficiaries of any agreement he had with AEP. (Doc. 68 at ¶¶ 14, 18, 29-36; Doc. 69 at ¶¶ 14, 18, 29-36.) Plaintiff also denied that he used improper equipment or positioning that caused his injuries. (Doc. 68 at ¶ 28; Doc. 69 at ¶ 28.)

On July 26, 2023, Defendants filed amended counterclaims that largely mirror their original counterclaims. (*Compare* Docs. 64, 65 *with* Docs. 142, 143.) The amended counterclaims differ in only two respects: (1) they are asserted against both Plaintiff and "Plaintiff d/b/a R&R Investments of Victoria" ("R&R"); and, (2) they include new allegations that Plaintiff was registered to do business as and was either the principal or an independent contractor of R&R, and that he signed the ICA on R&R's behalf. (Doc. 142 at 4-15; Doc. 143 at 6-17.)[3] As of the date of this Memorandum Opinion and Order, Plaintiff has not answered Defendants' amended counterclaims.

On January 4, 2024, Defendants filed their Motion for Judgment on the Pleadings or, in the Alternative, Default Judgment. (Doc. 195.) In this Motion, Defendants argue that Plaintiff's failure to answer their amended counterclaims within 21 days constitutes an admission of all of the allegations in the claims under Federal Rule of Civil Procedure 8(b)(6). (*Id.* at 3-8.) Based on these

---

[2] The purported ICA attached to Defendants' counterclaims consists of three pages of substantive content, followed by a blank fourth page. (Docs. 64-1, 65-1.)

[3] Documents 142 and 143 contain Defendants' answers to Plaintiff's original complaint, their amended counterclaims, and the excerpts of the purported ICA incorporated in the amended counterclaims. (*See generally* Docs. 142, 143.) By citing to paragraph numbers in these pleadings, the Court refers to the numbered paragraphs in the sections in which Defendants assert their amended counterclaims. (*See* Doc. 142 at 4-10; Doc. 143 at 6-12.)

alleged admissions, Defendants contend that they are entitled to judgment on the pleadings on all of their claims. (*Id.*) Alternatively, Defendants argue that they are entitled to a default judgment under Federal Rule of Civil Procedure 55 due to Plaintiff's failure to file responsive pleadings to the amended counterclaims. (*Id.* at 8.)

On February 28, 2024, Plaintiff filed his Motion for Judgment on the Pleadings or, in the Alternative, Motion for Summary Judgment on Defendants' Counterclaims. (Doc. 230.) In his Motion, Plaintiff argues that he is entitled to judgment on the pleadings because Defendants' amended counterclaims fail to state a claim upon which relief can be granted. (*Id.*) Alternatively, Plaintiff asserts that he is entitled to summary judgment on these claims because Defendants cannot present evidence of an enforceable agreement between Plaintiff and AEP or that Defendants are intended third-party beneficiaries of such an agreement. (*Id.* at 3-4, 12, 16.)

## II. DISCUSSION

### A. Legal Standards

<u>1. Motions Under Federal Rule of Civil Procedure 12(c) – Judgment on the Pleadings</u>

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings any time after the pleadings have closed so long as the motion does not delay the trial. Fed. R. Civ. P. 12(c). In considering Rule 12(c) motions, courts apply the same standards that apply to motions under Rule 12(b)(6). *Sanchez v. United States Dep't of Energy*, 870 F.3d 1185, 1199 (10th Cir. 2017). "Thus, to survive judgment on the pleadings, [a claimant] must allege 'a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). For a claimant to state a claim to relief that is plausible on its face, the claim must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Courts must "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same." *Colony Ins. Co.*

*v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012). However, "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' do not count as well-pleaded facts." *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). "Judgment on the pleadings is appropriate only when the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1141 (10th Cir. 2012) (quotation marks omitted).

###### 2. Motions Under Federal Rule of Civil Procedure Rule 56 - Summary Judgment

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1291 (10th Cir. 1999); *see* Fed. R. Civ. P. 56(a). "A disputed fact is 'material' if it might affect the outcome of the suit under the governing law, and the dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997).

The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact and its entitlement to a judgment as a matter of law. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998). If the movant carries this initial burden, the burden shifts to the nonmovant "to go beyond the pleadings and set forth specific facts that would be admissible in evidence" that demonstrate a genuine dispute as to material facts. *Id.* at 671 (quotation marks omitted); *see also Salehpoor v. Shahinpoor*, 358 F.3d 782, 789 (10th Cir. 2004) (noting that unsupported conclusory allegations are insufficient to overcome summary judgment). If the nonmovant can show a "genuine dispute" as to material facts, the Court views the disputed facts

in the light most favorable to him. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). However, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**B.  Defendants' Motion for Judgment on the Pleadings or for Default Judgment**

<u>1. Judgment on the Pleadings</u>

Defendants' request for judgment on the pleadings hinges on the argument that, under Federal Rules of Civil Procedure 8(b)(6) and 12(a)(1)(B), Plaintiff's failure to timely answer their amended counterclaims constitutes an admission of all allegations stated therein. (Doc. 195 at 3-8.) Plaintiff counters that his failure to answer the amended counterclaims should not be considered an admission because he answered Defendants' substantively identical original counterclaims. (Doc. 217 at 3-5.) In their reply, Defendants dispute Plaintiff's characterization of the amended counterclaims, asserting that the addition of Plaintiff's d/b/a as a counter-defendant makes the claims substantively different and that the d/b/a had an independent obligation to answer. (Doc. 242 at 2.) Defendants further argue that the Court should strictly apply Rule 8(b)(6), which states that "[a]n allegation … is admitted if a responsive pleading is required and the allegation is not denied." Fed. R. Civ. P. 8(b)(6); (*see* Doc. 242 at 1-2.)

Defendants' argument that their amended counterclaims are substantively different from their original counterclaims is without merit, as is their contention that Plaintiff's d/b/a had an independent obligation to answer these claims. Plaintiff's "d/b/a" designation is simply an alternative name under which Plaintiff operates his business, not a legally distinct entity. *See Childress v. Deering*, 2019 WL 409825, at *5 (D.N.M. Jan. 29, 2019) ("The designation 'd/b/a' means 'doing business as' but is merely descriptive of the person … who does business under some other name. Doing business under another name does not create an entity distinct from the person operating the business. The business name is a fiction, and so too is any implication that

7

the business is a legal entity separate from its owner.") (ellipsis omitted); *see also Santa Fe Goldworks, Inc. v. Bella Jewelry, LLC*, 2024 WL 3161893, at *3 n.8 (D.N.M. June 25, 2024) ("[A] 'doing business as' designation is not a separate legal entity.") (citing cases). Thus, the amended counterclaims do not introduce any substantively new allegations by adding this appellation, and the d/b/a did not have an independent obligation to answer.

Turning to Rule 8(b)(6), the Tenth Circuit has not addressed how the rule should apply when a party fails to respond to an amended claim that is substantively no different from one previously answered. However, the Court finds persuasive the decisions of other circuits holding that a party does not admit to allegations in an amended complaint if it has previously denied identical or substantially similar claims in the same proceeding. *See Edelman v. Belco Title & Escrow*, LLC, 754 F.3d 389, 394-95 (7th Cir. 2014) (declining to deem contents of third and fourth amended complaints admitted pursuant to Rule 8(b)(6) where defendant did not answer those complaints but did answer second amended complaint, and second, third, and fourth amended complaints "stated the very same allegations against [that defendant]"); *LaGorga v. Kroger Co.*, 407 F.2d 671, 673 (3d Cir. 1969) (holding that where party had previously denied substantially similar allegations, its "failure to specifically respond" to amended complaint "did not result in an admission under Rule 8[]"); *cf. Nouri v. Cnty. of Oakland*, 615 F. App'x 291, 297 (6th Cir. 2015) (declining to deem admitted allegations not denied in answer to second amended complaint where defendants had denied substantially similar allegations in answer to first amended complaint). As the Seventh Circuit explained, "[t]he purpose of a responsive pleading is to put everyone on notice of what the defendant admits and what it intends to contest," and when a defendant has done so by answering the allegations against it, the plaintiff "cannot claim that [it is] prejudiced" by a

subsequent failure to answer an amended pleading that makes the same allegations. *Edelman*, 754 F.3d at 395. "[T]his is clearly a no harm, no foul situation." *Id.* (brackets omitted).

Moreover, the Court is not persuaded by Defendants' citation to *Security USA Services, LLC v. Invariant Corp.,* 2023 WL 2573293 (D.N.M. Mar. 20, 2023) ("*Security USA*"), for the proposition that Plaintiff's failure to answer their amended counterclaims constitutes an admission. (*See* Doc. 195 at 4.) Unlike the present case, the plaintiff in *Security USA* never filed a response to the defendant's original counterclaims. *Sec. USA Services*, 2023 WL 2573293, at *2. Thus, the *Security USA* court did not address how Rule 8(b)(6) should apply in situations where a plaintiff has previously denied substantively identical allegations in an amended counterclaim.

Considering the persuasive authority from other circuits and the substantively identical nature of the allegations in Defendants' original and amended counterclaims, the Court will accept the denials and factual assertions in Plaintiff's answers to Defendants' original counterclaims in deciding Defendants' Rule 12(c) motion on their amended counterclaims. *See Colony Ins. Co.*, 698 F.3d at 1228. Thus, and because Defendants' request for judgment on the pleadings on the amended counterclaims hinges on their position that Plaintiff has admitted allegations that he has in fact denied, the Court will deny Defendants' request. (*See* Docs. 68, 69, 195); *Sanders*, 689 F.3d at 1141.

### 2. Default Judgment

Alternatively, Defendants argue that Plaintiff's failure to answer their amended counterclaims warrants default judgment in their favor. (Doc. 195 at 8.) The decision whether to enter a default judgment is committed to the district court's sound discretion. *Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 771 (10th Cir. 1997). Courts "strongly favor resolution of a dispute on the merits," *Hise v. Philip Morris Inc.*, 208 F.3d 226, at *3 (10th Cir. 2000), and view default judgment as a "harsh sanction." *In re Rains*, 946 F.2d 731, 732 (10th Cir.

1991). Accordingly, default judgment is "normally … available only when the adversary process has been halted because of an essentially unresponsive party." *In re Rains*, 946 F.2d at 732.

Federal Rule of Civil Procedure 55 sets forth the procedures by which a party may obtain a default judgment. Under this rule, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead *or otherwise defend*, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a) (emphasis added). The Tenth Circuit has noted that "a summary judgment motion, seeking to dispose of all the issues of a case, is an effort to 'otherwise defend,' and as such, is sufficient to prevent default judgment." *Hise*, 208 F.3d 226, at *3.

Here, Plaintiff answered Defendants' original counterclaims, which are substantively no different from their amended counterclaims. (Docs. 68, 69; *compare* Docs. 64, 65 *with* Docs. 142, 143.) Moreover, in his response to Defendants' motion seeking leave to amend their original counterclaims, Plaintiff stated his intent to contest these counterclaims via a dispositive motion, which he later did by filing his motion for judgment on the pleadings or for summary judgment. (Doc. 132 at 2 n.2; Doc. 230.) In these circumstances, the adversary process has not been halted by an essentially unresponsive party, and Plaintiff has not failed to otherwise defend against Defendants' amended counterclaims. The Court will therefore in its discretion deny Defendants' request for a default judgment in their favor.

### C.  Plaintiff's Motion for Judgment on the Pleadings or for Summary Judgment

In their amended counterclaims, Defendants assert three counts against Plaintiff and his d/b/a, *i.e.*, counts for contractual indemnification, traditional and proportional indemnification, and contribution. (Doc. 142 at ¶¶ 30-48; Doc. 143 at ¶¶ 29-47.) In his Motion, Plaintiff argues that the Court should dismiss Defendants' claims against his d/b/a R&R as redundant and grant judgment

in his favor on all three of the substantive counts Defendants have asserted. (*See generally* Doc. 230.) The Court will consider each of Plaintiff's arguments in turn.

1. Judgment on the Pleadings

a. *Counterclaims Against R&R*

In his Motion, Plaintiff first moves for judgment on the pleadings on Defendants' amended counterclaims against his d/b/a, R&R. (Doc. 230 at 5-6.) In support, Plaintiff argues that these claims are "redundant" to Defendants' claims against Plaintiff himself, because R&R "is not a separate legal entity." (*Id.* at 5.) Plaintiff further asserts that allowing a trial on these claims would "create an unnecessary risk that a jury could impose duplicative fault on Plaintiff." (*Id.*) Defendants counter that the Court has already considered and accepted the viability of these claims in granting Defendants' opposed motion to amend to assert them. (Doc. 250 at 3-4.) Defendants further contend that Plaintiff held himself out as R&R in relevant business documents, and thus that "*not having R&R on a verdict form might confuse a jury because R&R is mentioned* [in] these documents." (*Id.* at 4-5.)

As noted in Section II.B.1., *supra*, Plaintiff's d/b/a designation is simply an alternative name under which he operates his business, not a legally distinct entity. *Santa Fe Goldworks, Inc.*, 2024 WL 3161893, at *3 n.8; *Childress*, 2019 WL 409825, at *5. Thus, the amended counterclaims against this entity are ultimately no different from the amended counterclaims against Plaintiff himself. However, as Defendants observe, Plaintiff did hold himself out as R&R in potentially relevant business documents, (*see, e.g.*, Doc. 250-3), and thus, disallowing Defendants' claims against this d/b/a would be at least as likely to result in jury confusion as allowing such claims. The Court will therefore deny Plaintiff's Motion insofar as it seeks dismissal of Defendants' amended counterclaims against "Plaintiff d/b/a R&R." (*See* Docs. 142, 143.) However, the denial is without prejudice to Plaintiff's ability to timely request appropriate jury instructions or

modifications to verdict forms or special interrogatories to clarify that R&R does not have a legal existence separate from Plaintiff and that separate allocations of fault cannot be made to both Plaintiff and his d/b/a designation.

      b.  *Contribution Counterclaims*

In his Motion, Plaintiff next argues that he is entitled to judgment on the pleadings on Defendants' amended counterclaims for contribution. (Doc. 230 at 7-8.) In support, he cites to *In re Consolidated Vista Hills Retaining Wall Litigation*, 1995-NMSC-020, 893 P.2d 438 ("*Vista Hills*"), for the proposition that "only a defendant who is otherwise denied apportionment of fault may seek … contribution."[4] (*Id.*) Defendants do not discuss Plaintiff's challenge to their contribution claims in their response to his Motion. (*See generally* Doc. 250.)

In *Vista Hills*, the New Mexico Supreme Court noted that, under N.M. Stat. Ann. § 41-3-2, "if one tortfeasor has been held liable for more than … his or her share of the fault, that tortfeasor may seek contribution from others who were at fault." *Vista Hills*, 1995-NMSC-020, at ¶ 37, 893 P.2d at 448. Similarly, Section 41-3-2 provides that "[t]he right of contribution exists among joint tortfeasors" but that "[a] joint tortfeasor is not entitled to a money judgment for contribution until he has by payment discharged the common liability or has paid more than his pro rata share thereof." N.M. Stat. Ann. § 41-3-2(A), (B).

Here, Defendants have wholly failed to explain how they could be required to pay more than their pro rata share of the parties' common liability, if any, for the accident at issue. As Plaintiff points out, he has sued Defendants for negligence, to which principles of comparative fault apply. (Doc. 230 at 8 (citing *Otero v. Jordan Rest. Enterprises*, 1996-NMSC-047, ¶ 11, 922 P.2d 569,

---

[4] The parties have stipulated that "New Mexico substantive law" governs this diversity case. (*See* Doc. 23 at 3.)

572–73, *Vista Hills*, 1995-NMSC-020, at ¶¶ 34-35, 893 P.2d at 447-48).) And, under these principles, Plaintiff and each Defendant can only be held liable for his or its percentage of fault as found by the trier of fact. *Safeway, Inc. v. Rooter 2000 Plumbing & Drain SSS*, 2016-NMSC-009, ¶¶ 23, 24, 368 P.3d 389, 397, *superseded by statute on other grounds as stated in First Mercury Ins. Co. v. Cincinnati Ins. Co.*, 882 F.3d 1289, 1298 n.4 (10th Cir. 2018). Defendants have failed to rebut Plaintiff's showing that the remedy of contribution is neither necessary nor available to them in these circumstances. *See* N.M. Stat. Ann. § 41-3-2(A), (B). Thus, Plaintiff is entitled to judgment on the pleadings on Defendants' amended counterclaims for contribution and these claims will be dismissed with prejudice.

   c. *Traditional and Proportional Indemnification Counterclaims*

   Plaintiff also argues that he is entitled to judgment on the pleadings on Defendants' amended counterclaims for traditional and proportional indemnification. (Doc. 230 at 6-11.) Under New Mexico law, claims for traditional and proportional indemnification may be maintained against third parties. *See Safeway, Inc.*, 2016-NMSC-009, at ¶ 26, 368 P.3d at 389 ("New Mexico … recognizes proportional indemnification, which allows defendants to recover *from a third-party* for the portion of a plaintiff's loss which the third-party's conduct caused, even when the law does not apportion fault amongst tortfeasors under a theory of comparative fault.") (emphasis added); *New Mexico Pub. Sch. Ins. Auth. v. Arthur J. Gallagher & Co.*, 2008-NMSC-067, ¶ 23, 198 P.3d 342, 349 ("Traditional indemnification grants the person who has been held liable for another's wrongdoing an all-or-nothing right of recovery *from a third party*, such as the primary wrongdoer.") (emphasis added). But the parties have not cited to, and the Court has not located,

any New Mexico law recognizing a tort defendant's claim for traditional or proportional indemnification against a plaintiff. (*See generally* Docs. 230, 250, 254.)

Here, Defendants assert their amended counterclaims for traditional and proportional indemnification against Plaintiff, who is manifestly not a third party to this lawsuit, and against Plaintiff's d/b/a designation, which does not have a separate legal existence. *Santa Fe Goldworks, Inc.*, 2024 WL 3161893, at *3 n.8; *Childress*, 2019 WL 409825, at *5. Therefore, Defendants' amended counterclaims for traditional and proportional indemnification against Plaintiff and R&R are improper as a matter of law, and the Court will grant Plaintiff judgment on the pleadings on these claims.[5]

### d. Contractual Indemnification Counterclaims

Plaintiff presents three arguments in support of his request for judgment in his favor on Defendants' amended contractual indemnification counterclaims: (1) the excerpted contractual provisions submitted with Defendants' amended counterclaims do not show the essential term of the timeframe during which the alleged ICA was in effect, thereby making it unenforceable[6]; (2) under N.M. Stat. Ann. § 56-7-2, the indemnification clause in the alleged ICA between Plaintiff and AEP is void; and, (3) Defendants do not adequately allege facts to show that they were

---

[5] Defendants argue that they are entitled to traditional indemnification because they were at most "passive" tortfeasors while Plaintiff was an "active" tortfeasor. (Doc. 250 at 1, 5-6.) And indeed, a party may obtain traditional indemnification from an "active" tortfeasor if it was a "passive" tortfeasor in a case "truly premised on vicarious or derivative liability." *Safeway, Inc.*, 2016-NMSC-009, ¶¶ 15, 28, 33, 368 P.3d at 395, 398-400. But even if New Mexico law had recognized a tort defendant's claim for traditional indemnification against a plaintiff, which it has not, Plaintiff's claims against Defendants are not premised on vicarious or derivative liability, (Doc. 1), and thus the distinction between active and passive tortfeasors that Defendants seek to make is simply not relevant here.

[6] Plaintiff also notes that the excerpts submitted with the amended counterclaims do not include a signature from an AEP representative. (Doc. 230 at 11.) However, Plaintiff does not develop any argument as to how this missing signature affects the validity of the alleged agreement, so the Court declines to consider this point further. *See Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. [The Court] will not do his research for him.").

intended third-party beneficiaries of this indemnification clause. For the reasons stated below, each of these arguments fails on the present record.

Plaintiff's first argument fails because it ignores Defendants' plausible allegations that the ICA between Plaintiff and AEP was in effect on the date of Plaintiff's injury. It is true that, in the contractual excerpts submitted with Defendants' amended counterclaims, the spaces for recording the agreement's effective dates are blank. (*See* Doc. 142 at 12; Doc. 143 at 14.) However, in their amended counterclaims, Defendants make several factual allegations to plausibly support the inference that the agreement was in effect on the day of the accident at issue. For example, Defendants allege that "on the day of Plaintiff's injury," (1) Flow Testing had an agreement with AEP to provide personnel for the operation of Kaiser-Francis wells, (2) AEP contracted with independent contractors to operate the Kaiser-Francis well site at issue, and (3) Plaintiff "was an independent contractor that conducted business with AEP" and "had an arms-length relationship with" AEP for the benefit of Flow Testing and Kaiser-Francis. (Doc. 142 at ¶¶ 12-14, 20; Doc. 143 at ¶¶ 11-13, 19.) Defendants further allege that Plaintiff signed the alleged ICA incorporated in their amended counterclaims and that AEP hired Plaintiff to work at the well site where the accident occurred pursuant to that agreement. (Doc. 142 at ¶¶ 15-16; Doc. 143 at ¶¶ 14-15.) Accepted as true and viewed in Defendants' favor, these allegations would allow a rational factfinder to conclude that the alleged ICA was in effect on the day of Plaintiff's injury, even though the excerpts attached to Defendants' amended counterclaims do not memorialize its effective dates. *See Iqbal*, 556 U.S. at 678; *Sanchez*, 870 F.3d at 1199. Plaintiff's argument regarding the lack of effective dates in the excerpts is insufficient to warrant granting his Rule 12(c) motion.

Plaintiff's second argument fails because it overlooks the limited scope of Defendants' amended counterclaims, which only seek to enforce the indemnification agreement in ways New Mexico's anti-indemnity statute would not prohibit, assuming their allegations to be true. The statute in question, N.M. Stat. Ann. § 56-7-2, provides as follows:

> (A) An agreement, covenant or promise … contained in … an agreement pertaining to a well for oil … within New Mexico, that purports to indemnify the indemnitee against loss or liability for damages arising from the circumstances specified in Paragraph (1), (2) or (3) of this subsection is against public policy and is void:
>
>   (1) the sole or concurrent negligence of the indemnitee or the agents or employees of the indemnitee;
>
>   (2) the sole or concurrent negligence of an independent contractor who is directly responsible to the indemnitee; or
>
>   (3) an accident that occurs in operations carried on at the direction or under the supervision of the indemnitee, an employee or representative of the indemnitee or in accordance with methods and means specified by the indemnitee or employees or representatives of the indemnitee.

N.M. Stat. Ann. § 56-7-2(A).

Plaintiff argues that the indemnification clause in the alleged ICA is "facially void" because it purports to require Plaintiff to indemnify the indemnitee, AEP, for AEP's negligence. (Doc. 230 at 14.) However, this argument overlooks the limiting clause providing that the indemnification agreement would only "be effective to the maximum extent permitted under applicable law." (Doc. 142 at 13; Doc. 143 at 15.) And though Section 56-7-2 does appear to prohibit agreements requiring indemnification against an indemnitee's negligence in the context of this case, it does not necessarily preclude the relief Defendants seek in their amended counterclaims, *i.e.*, indemnification against the alleged negligence of Plaintiff, the indemnitor. (*See* Doc.142 at ¶¶ 30-37; Doc. 143 at ¶¶ 29-36; Doc. 250 at 10.) In other words, while the portion of the indemnification clause purporting to entitle AEP to indemnification for its own negligence would plainly be unenforceable under the statute, the clause is not necessarily invalid insofar as it covers losses caused by Plaintiff's negligence. *See Guitard v. Gulf Oil Co.*, 1983-NMCA-103, ¶ 16, 670 P.2d

969, 972 (holding that "the language in § 56–7–2(A) which makes void and unenforceable any agreement which purports to indemnify an indemnitee for injuries or death 'arising from the concurrent negligence of the indemnitee' means only that the indemnitee cannot contract away liability for his own percentage of negligence") (ellipsis omitted).

Moreover, although Plaintiff argues that the indemnification clause is also void because it purports to require him to indemnify AEP "for the negligence 'of an independent contractor' (Plaintiff) who is responsible to AEP," (Doc. 230 at 14), Defendants' amended counterclaims do not allege that Plaintiff was "directly responsible to" AEP, as would be required to render this portion of the indemnification clause void as a matter of law under Section 56-7-2. *See* N.M. Stat. Ann. § 56-7-2(A)(2). Indeed, Defendants specifically allege that Plaintiff had an independent duty to provide properly trained personnel and proper tools and equipment for the work he agreed to perform, which, viewed in Defendants' favor, suggests that he was responsible to himself for training and supervising himself and any other workers he supplied and for maintaining any equipment he used or provided. (Doc. 142 at ¶¶ 23-26; Doc. 143 at ¶¶ 22-25.) Nor does Plaintiff cite to any law that would conclusively establish that he was nevertheless directly responsible to AEP within the meaning of the statute. For these reasons, Plaintiff is not entitled to judgment on the pleadings on the basis that New Mexico's anti-indemnity statute bars Defendants' amended counterclaims for contractual indemnification.[7]

---

[7] Plaintiff further contends, without citation to any authority, that Defendants' amended counterclaims for contractual indemnification are invalid to the extent that Defendants seek indemnification for damages caused by Plaintiff's negligence because "the issue can be handled through a comparative fault instruction." (Doc. 230 at 14.) While this is true with respect to damages, Defendants also seek to have Plaintiff indemnify them for the "costs, fees, and interest" they incurred "as the result of defending against Plaintiff's Complaint." (Doc. 142 at ¶ 36; Doc. 143 at ¶ 35.) Therefore, a comparative-fault apportionment would not provide Defendants with all of the relief they seek. Plaintiff does not separately challenge the validity of Defendants' claims for costs, fees, and interest in his Motion, (*see generally* Doc. 230), and so the Court does not address that issue here.

Plaintiff's third argument, *i.e.*, that Defendants have failed to adequately allege that they are intended third-party beneficiaries of the purported indemnification agreement at issue, presents a closer question. Defendants contend that they are third-party beneficiaries to the indemnification clause in the alleged ICA between Plaintiff and AEP, because the clause required Plaintiff to indemnify AEP's "affiliated companies" and they fall within the scope of this term. (Doc. 250 at 14-15; *see* Doc. 142 at ¶¶ 30-37; Doc. 143 at ¶¶ 29-36; *see also* Doc. 242 at 9.) In support, Defendants point to their allegations regarding Flow Testing's agreement to provide labor at Kaiser-Francis well sites, AEP's agreement to provide Flow Testing with such labor, and AEP's hiring of Plaintiff to meet its obligations to Flow Testing. (Doc. 250 at 12-13; *see* Doc. 142 at ¶¶ 9-16; Doc. 143 at ¶¶ 8-15.) Plaintiff counters that the alleged ICA's language unambiguously indicates that Defendants are not intended third-party beneficiaries of the indemnification clause because they are not "affiliated companies." (Doc. 230 at 15-16; Doc. 254 at 10-12.)

Under New Mexico law, "[t]he paramount indicator of third party beneficiary status is a showing that the parties to the contract intended to benefit the third party, either individually or as a member of a class of beneficiaries." *Valdez v. Cillessen & Son, Inc.*, 1987-NMSC-015, ¶ 34, 734 P.2d 1258, 1264. "Such intent must appear either from the contract itself or from some evidence that the person claiming to be a third party beneficiary is an intended beneficiary." *Id.* A party is considered an intended third-party beneficiary to a contract

> if the promised performance will be of pecuniary benefit to [the third party] and the contract is so expressed as to give the promisor reason to know that such benefit is contemplated by the promisee as one of the motivating causes of his making the contract.

*Permian Basin Inv. Corp. v. Lloyd*, 1957-NMSC-048, ¶ 22, 312 P.2d 533, 537.

Here, the excerpts of the alleged ICA submitted with Defendants' amended counterclaims undisputedly provide that "affiliated companies" of AEP are third-party beneficiaries to the

18

indemnification clause on which Defendants rely. (Doc. 142 at 14; Doc. 143 at 16.) But the parties disagree regarding whether this alleged contractual term can be construed to include Defendants.

The New Mexico Supreme Court thoroughly discussed the principles of contract construction applicable here in *ConocoPhillips Co. v. Lyons*, 2013-NMSC-009, 299 P.3d 844 ("*Lyons*"). The *Lyons* court began by observing that the meaning of a contractual term "is to be deduced from the language employed by [the parties]; and where such language is not ambiguous, it is conclusive." *Id.* at ¶ 23, 299 P.3d at 852. A contract term is "ambiguous" in this context "if it is reasonably and fairly susceptible to different constructions." *Id.* (quotation marks and brackets omitted). Whether a contractual term is ambiguous is a threshold question for the courts, and in deciding it, they may consider "evidence of the circumstances surrounding the making of the contract and of any relevant usage of trade, course of dealing, and course of performance." *Id*.

Of particular relevance here, the *Lyons* court explained that

> [t]he standard to be applied in determining whether a contract term is ambiguous … is the same standard applied in a motion for summary judgment. Courts will grant summary judgment and interpret the meaning as a matter of law when the evidence presented is so plain that it is only reasonably open to one interpretation. If, however, a court determines that the contract is reasonably and fairly open to multiple constructions, then an ambiguity exists, summary judgment should be denied, and the jury should resolve all factual issues presented by the ambiguity.

*Id.* at ¶ 9, 299 P.3d at 849 (brackets, quotation marks, and citations omitted).

The excerpts of the alleged ICA that Defendants submitted with their amended counterclaims do not define the term "affiliated companies."[8] (Doc. 142 at 12-14; Doc. 143 at 14-

---

[8] Ordinarily, the Court would consider the entire alleged ICA as a harmonious whole in determining whether the term "affiliated companies" is ambiguous. *Pub. Serv. Co. of New Mexico v. Diamond D Const. Co.*, 2001-NMCA-082, ¶ 19, 33 P.3d 651, 659. But Defendants did not submit the entire alleged ICA with their amended counterclaims. (Doc. 142 at 12-14; Doc. 143 at 14-16.) And though they did attach what they claim is the entire agreement to their response to Plaintiff's Motion, the document in question is blank and unsigned and thus is not indisputably authentic. (*See* Doc. 250 at 9-10; Doc. 250-5 at 3-13.) As such, the Court will not consider it to the extent Plaintiff's Motion is brought

16.) It appears in a list that also includes AEP's "parent," "subsidiary," and "holding" companies, (*id.*), which could, as Plaintiff argues, indicate that it refers only to companies similarly related to AEP by ownership or control. (*See* Doc. 230 at 15.) But the term "affiliate" is defined in various ways depending on the source, and under some definitions "affiliated companies" could arguably be read more broadly to encompass companies, such as Defendants, with which AEP was allegedly contractually associated. *See Fundamental Admin. Servs., LLC v. Patton*, 504 F. App'x 694, 700, 701 n.3 (10th Cir. 2012) (discussing various definitions of "affiliate," including "a person, organization, or establishment associated with another as a subordinate, subsidiary, or member," "a company effectively controlled by another or associated with others under common ownership or control," "an affiliated person or organization," "[a] person or organization that is affiliated with a larger body; a member," and "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation.") (brackets and emphasis omitted); *see also* https://www.merriam-webster.com/dictionary/affiliate (last accessed Sept. 7, 2024) (defining "to affiliate" as "to bring or receive into close connection as a member or branch," "to associate as a member," or "to connect or associate oneself").

Admittedly, reading "affiliated companies" to include Defendants appears to stretch the term to its very broadest reasonably and fairly possible construction.[9] And evidence of the circumstances surrounding the making of the alleged ICA and any relevant usage of trade, course of dealing, or course of performance could well show that such a broad construction is *not* in fact reasonably and fairly possible. But viewing Defendants' amended counterclaims in their favor,

---

under Rule 12(c). *Cuervo v. Sorenson*, — F.4th —, 2024 WL 3997268, at *2 (10th Cir. Aug. 30, 2024); *Woodie v. Berkshire Hathaway Homestate Ins. Co.*, 806 F. App'x 658, 664-65 (10th Cir. 2020).

[9] This is particularly true of Defendant Kaiser-Francis, which is not alleged to have ever had a direct contractual relationship with AEP. (*See generally* Docs. 142, 143.)

Plaintiff has failed to meet his burden to show that he is entitled to judgment on the pleadings on Defendants' claims for contractual indemnification on the basis that Defendants have failed to plausibly allege that they are intended third-party beneficiaries of the indemnification clause in the alleged ICA between Plaintiff and AEP. For all of the above reasons, the Court will deny Plaintiff's request for judgment on the pleadings on Defendants' amended contractual indemnification counterclaims.

2. Summary Judgment

Plaintiff also asserts that he is entitled to summary judgment on Defendants' amended counterclaims for contractual indemnification because: (1) "Defendants can present no evidence that the contractual parties' intended date range included the date of the incident"; and, (2) "Defendants can … present no evidence that they were intended to be third party beneficiaries of … [the] contract." (Doc. 230 at 12, 16.) However, Plaintiff did not develop any argument or provide any citations to the record evidence to support his request for summary judgment, as opposed to judgment on the pleadings, on these bases. (*See generally id.*)

As noted in Section II.A.2., *supra*, the party moving for summary judgment bears the initial burden to show that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323; *Adler*, 144 F.3d at 670–71. To satisfy this initial burden, the moving party may either "produce evidence showing the absence of a genuine issue of material fact" or "point[] out … that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. But "[i]t is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the [claimant] has no evidence to prove his case." *Id.* at 328 (White, J., concurring).

Plaintiff has failed to satisfy these standards as to Defendants' amended contractual indemnification claims. He has baldly asserted that he is entitled to summary judgment on the

claims, but beyond the arguments he offered to support his request for judgment on the pleadings, he has made no effort to explain why Defendants cannot supply evidence essential to their claims or to produce any evidence to show the absence of a genuine issue of material fact. (*See* Doc. 230 at 12, 16.) Plaintiff has therefore failed to meet his initial summary judgment burden as to Defendants' amended contractual indemnification counterclaims. In particular, he has failed to show the absence of a genuine factual dispute regarding whether Defendants are intended third-party beneficiaries of the indemnification clause in the alleged ICA between him and AEP.

Nevertheless, pursuant to Federal Rule of Civil Procedure 56(f), the Court may grant a motion for summary judgment on grounds not raised by a party after giving notice and a reasonable time to respond. Fed. R. Civ. P. 56(f)(2). And curiously, two of the evidentiary items attached to Defendants' response in opposition to Plaintiff's Motion suggest that Plaintiff may be entitled to summary judgment in his favor on the question of Defendant Kaiser-Francis' third-party beneficiary status.

The first evidentiary item is the unsigned document purporting to be the complete ICA governing the relationship between Plaintiff and AEP at the relevant time. (Doc. 250-5 at 3-13.) Like the excerpts incorporated in Defendants' amended counterclaims, this document does not define the term "affiliated companies" as used in the indemnification clause on which Defendants rely. (*Id.*) But other provisions in the document refer to the entities for whose benefit AEP contracted with laborers like Plaintiff—*i.e.*, entities like Defendants—as "clients" rather than "affiliated companies." (*See, e.g.*, *id.* at 4, 6-8.) Though these provisions do not directly address whether AEP "clients" fall within the category of "affiliated companies" for purposes of indemnification, their use of distinct terminology strongly supports the inference that "affiliated companies" and "clients" are distinct entities.

The second evidentiary item is the deposition testimony of AEP's president, Ryan Alder, to the effect that AEP required all of its independent contractors to sign an agreement[10] "hold[ing] AEP and its customers harmless" in order "[t]o protect [itself] and [its] clients," and critically, that though Flow Testing is an AEP client, Kaiser-Francis is not. (Doc. 250-1 at 3; *see* Doc. 250 at 4.) Viewed in Defendants' favor, this testimony affirmatively supports Flow Testing's claim to third-party beneficiary status notwithstanding the language in the complete alleged ICA, by raising the inference that AEP intended the agreement's indemnification clause to protect Flow Testing whether it is an affiliated company or not.[11] But Mr. Alder's testimony has the opposite effect with respect to Kaiser-Francis, clearly implying that this Defendant was something more distant than either an affiliated company or a client and that AEP did *not* intend the indemnification clause to apply to it.[12]

In light of Mr. Alder's testimony, and assuming that the agreement attached to Defendants' response is in fact the ICA that governed Plaintiff's and AEP's relationship at the relevant time, the Court is inclined to hold that, as a matter of law, Defendant Kaiser-Francis is not an intended third-party beneficiary of the agreement's indemnification clause and is not entitled to contractual indemnification from Plaintiff. *See Valdez*, 1987-NMSC-015, at ¶ 34, 734 P.2d at 1264. Having

---

[10] Plaintiff argues that Mr. Alder was referring to a "master service agreement" rather than an "independent contractor agreement." (Doc. 254 at 12.) But Defendants have submitted evidence that here, these two types of agreements are one and the same. (Doc. 250-5 at 1.)

[11] Of course, Mr. Adler's testimony does not speak to whether Plaintiff had reason to know of AEP's intent on this point. But Plaintiff does not, in support of his request for summary judgment, point to any evidence tending to show that he did not.

[12] Mr. Alder's testimony that Kaiser-Francis is not an AEP client is perhaps unsurprising in light of the fact that, again, Kaiser-Francis is not alleged to have ever had a direct contractual relationship with AEP.

thus notified the parties of its current inclination, the Court will permit the parties to submit supplemental briefing on this issue pursuant to the schedule set forth below.

### III. CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED as follows.

1. Defendants' Motion for Judgment on the Pleadings or, in the Alternative, Default Judgment (Doc. 195) is DENIED;

2. Plaintiff's Motion for Judgment on the Pleadings or, in the Alternative, Motion for Summary Judgment on Defendants' Counterclaims (Doc. 230) is GRANTED IN PART and DENIED IN PART as follows:

   a. Plaintiff's Motion is GRANTED IN PART in that judgment on the pleadings in Plaintiff's favor is GRANTED on Defendants' amended counterclaims for contribution and traditional and proportional indemnification, which are hereby DISMISSED WITH PREJUDICE;

   b. In all other respects, Plaintiff's Motion is DENIED; and,

3. Within five (5) calendar days of entry of this Order, Plaintiff may submit a supplemental brief addressing whether he is entitled to summary judgment on Defendant Kaiser-Francis' amended contractual indemnification counterclaims on the grounds described in Section II.C.2, above. Defendants may file a response in opposition to Plaintiff's supplemental brief no later than five (5) calendar days after Plaintiff files the supplemental brief, and Plaintiff may file a reply within three calendar (3) days after Defendants file their response.

IT IS SO ORDERED.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent